UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:15-CR-135 |
| | ) | REEVES/GUYTON |
| LARRY DEWAYNE WILLIAMS | ) | |

**MEMORANDUM AND ORDER**

Larry Dewayne Williams's *pro se* motion for compassionate release to home confinement [D. 43] is before the Court. As follows, it does not appear that Mr. Williams has satisfied the statutory exhaustion requirements. Consequently, Mr. Williams's motion is **DENIED** without prejudice to his ability to re-file once exhaustion requirements have been met.

**I.** **Background**

On September 26, 2016, this Court sentenced Mr. Williams to a term of imprisonment of 84 months, followed by a 3-year supervised release term, for being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1).

On May 18, 2020, Mr. Williams filed the motion now before the Court. In the motion, Mr. Williams asks the Court to release him to home confinement due to the COVID-19 pandemic, citing concerns about the possible spread of the virus through his facility, his good conduct while incarcerated, and family circumstances. Mr. Williams does not identify any legal basis for the relief he seeks or provide any evidence to support his

factual assertions. However, he does state that he took "the first step of writing the warden about this matter and was denied."

## II. Analysis

Once a district court has imposed a sentence, the court lacks "the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010). Nevertheless, courts are receiving release requests for release under two distinct statutory "mechanisms" during the current pandemic—the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and what is often referred to as the "compassionate release" framework set forth in 18 U.S.C. § 3582(c)(1)(A). Here, as Mr. Williams has not identified a legal basis for his motion, the Court will review his petition under both mechanisms.

### A. CARES Act

First, Section 12003 of the CARES Act temporarily provides for expanded prisoner home confinement under the framework set out in 18 U.S.C. § 3624(c). CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act gives decision-making authority to of the Attorney General and the Director of the Bureau of Prisons ("BOP"). *See id.*; *accord* 18 U.S.C. § 3624(c)(2). Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.

Although a sentencing court may *recommend* a particular type of prison facility during sentencing, any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility or in

2

home confinement has no binding effect on the authority of the BOP to determine or change the place of imprisonment. *See* 18 U.S.C. § 3621(b).

Here, Mr. Williams references a handful of reasons that may or may not warrant home confinement, but, even in the midst of the COVID-19 pandemic, the BOP retains the authority to make that determination. The Attorney General has directed the Director of the Bureau of Prisons to prioritize the use of existing statutory authority to place prisoners in home confinement. *See* Memorandum from the Attorney General to the Director of Bureau of Prisons (Apr. 3, 2020), https://www.justice.gov/file/1266661/download (last visited May 26, 2020); *see also* Memorandum from the Attorney General to the Director of Bureau of Prisons (Mar. 26, 2020), https://www.justice.gov/file/1262731/download (last visited May 26, 2020). The BOP is evaluating its entire population to assess each inmate's vulnerability to COVID-19, whether home confinement would increase that inmate's risk of contracting COVID-19, and whether release to home confinement would risk public safety.

Consequently, because the Court does not have the power to order home confinement under the CARES Act, the Court cannot grant Mr. Williams's request on this basis. Likewise, because the Bureau of Prisons is in the best position to determine the proper placement of inmates taking into account individual considerations based on an inmate's background, medical history, and general considerations about public safety, the Court is not prepared to make a recommendation as to Mr. Williams.

3

### B. 18 U.S.C. § 3582(c)(1)(A)(i)

Alternatively, 18 U.S.C. § 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." However, 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides that defendants may move for what is often called compassionate release only "*after* the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The BOP has outlined the administrative appeal process. *See* Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (Jan. 17, 2019)*, https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The BOP Program Statement explains that a prisoner seeking a compassionate release must first file a request with the warden asking the BOP to move for compassionate release on the prisoner's behalf. *See id.* at 3 (citing 28 C.F.R. § 571.61). If that request is denied, the prisoner must appeal the denial through the BOP's Administrative Remedy Procedure. *See id.* at 15 (citing 28 C.F.R. § 571.63).

Here, Mr. Williams states that he made a request for compassionate release to the warden of his facility, which was denied. This may have satisfied the first step in the administrative process. But Mr. Williams does not state whether he appealed that denial through the BOP administrative process. As a result, it does not appear that Mr. Williams "has *fully* exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

4

bring a motion" on his behalf. 18 U.S.C. § 3582(c)(1)(A).[1]  Even during the COVID-19 pandemic, the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) cannot be summarily disregarded. *See United States v. Bolze*, No. 3:09-CR-93, 2020 WL 2449782, at *2 (E.D. Tenn. May 12, 2020) (expounding on the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Godofsky*, No. 5:16-59-1, 2020 WL 2188047, at *1–2 (E.D. Ky. May 6, 2020); *United States v. Boyd*, No. 3:14-CR-86, 2020 WL 2106023, at *1 (E.D. Tenn. May 1, 2020); *United States v. Edwards*, No. 3:13-CR-00012-1, 2020 WL 1987288, at *2 (M.D. Tenn. Apr. 27, 2020).  Consequently, the Court cannot weigh the merits of Mr. Williams's motion under the "compassionate release" framework until the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A)(i) is fully satisfied.

### III. Conclusion

Because the Court does not have the power to order home confinement under the CARES Act and the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) have not been met, Mr. Williams's motion [D. 43] is **DENIED** without prejudice to re-file when the exhaustion requirement has been met.

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] Moreover, while Mr. Williams speaks in general terms about "health concerns" and "proper medical treatment," he has not identified any specific medical conditions.  Further, he does not state whether his facility, Beckley FCI, has any current cases of the novel coronavirus.  Based on publicly available data from the Bureau of Prisons, it does not appear that there are any confirmed cases of the novel coronavirus at Beckley FCI at this time. *See* COVID-19 CORONAVIRUS, https://www.bop.gov/coronavirus/ (last visited May 26, 2020).